Case number 19-1065, Independent Union of Pension Employees for Democracy and Justice petitioner, Mrs. Federal Neighborhood Authority. Ms. Gaines for the petitioner, Ms. Osworth for the respondent. Case number 19-1065, Independent Union of Pension Employees for Democracy and Justice Case number 19-1065, Independent Union of Pension Employees for Democracy and Justice Case number 19-1065, Independent Union of Pension Employees for Democracy and Justice Case number 19-1065, Independent Union of Pension Employees for Democracy and Justice All right, counsel. Good morning, Your Honors. May it please the Court. My name is Eden Brown-Gaines, and I am arguing on behalf of the Independent Union of Pension Employees for Democracy and Justice. So the union was elected in May of 2011. At the same time, a predecessor union and the employer, the Pension Benefit Guarantee Corporation, were negotiating a collective bargaining agreement. Obviously, the predecessor union and the employer weren't pleased with the result of the election, and the election was challenged. When it became clear that the union would be certified, the predecessor union and the employer got together and, pursuant to the collective bargaining agreement that they had negotiated, appointed a panel of arbitrators to adjust and hear grievances. The panel that the predecessor union and the employer put together was not a panel that, obviously, they wanted to utilize, because when a grievance came up after they'd appointed a panel, they went to the FMCS rather than utilizing that panel to adjust the grievance. Counsel, you accept, I think, correct me if I'm wrong, that you were bound by the CBA, not as opposed to the MLA. Absolutely, yes. The union understood that the selection of arbitrators or the fact of the grievance process is a mandatory subject of negotiation, and even in negotiating a new CBA, that they would be bound by the fact that there would be grievances and that there would be a panel. The union's issue was with the language of the CBA, which said that the parties were to select mutually a panel of arbitrators, and their qualm was that, now that they are the union and the party, that they had not had the opportunity to select the panel of arbitrators. They got nowhere with the employer with respect to wanting to participate in this process, and so they went to the panel of arbitrators and advised those arbitrators that they had not been mutually selected. This case pertains to two of the arbitrators on the panel, and not all of the arbitrators that were ultimately selected. But when going to one of the arbitrators, Mr. Feigenbaum, he agreed that he had not been mutually selected, and mutuality was an important part of the process, and so he voluntarily resigned. When it came to the second arbitrator, Mr. Conway, he did not agree that he should resign and, in fact, cast the union's request that he voluntarily step down as a motion for recusal in an arbitration that wasn't quite pending at the time. So there was back and forth between the union and the arbitrator, and the union expressed its opinion, both that he should resign because he had not been mutually selected, but also that he had an ethical obligation to consider the fact that he had not been mutually selected and consider his resignation. Ultimately, the arbitrator did not resign. There was an arbitration hearing that went before Mr. Conway. The union participated in that arbitration hearing under protest, believing that he did not have jurisdiction, because during the pendency of the back and forth, the employer filed a charge with the FLRA concerning the union's conduct in speaking to and procuring the resignation of several of the arbitrators and filed a ULP. The moment ago you said, although the CBA wasn't binding, is binding, pardon me, the MOA is not. Yes, it is. Let me ask you, is it your position that in any event you didn't violate the MOA or that you did, but it's not binding? Well, the MOA wasn't violated because the union actually went forward with the one arbitration that was before the parties with that panel. They protested it, but they ultimately went forward with it. They simply believed that the arbitrator should know that they hadn't been mutually selected and had the opportunity to step down so that they could negotiate a new process with the employer in order to replace those arbitrators. A violation of the statute would either be to repudiate, I'm sorry, of the CBA would be either to repudiate the CBA believing that they shouldn't go forward at all, rather than saying that they should be a part of the process. Okay, but there's case law in the FLRA for treating the memorandum of agreement as binding on the new union as well. If it's a mandatory subject of bargaining, I think the MOA would be binding on the union. Right, and access to the grievance machinery is a mandatory subject. That's right, but the union sees this as a little different. Who serves on the arbitration panel is not the same issue as access to the grievance machinery. The union was not contesting the fact that there should be a grievance process and that there should be a panel of arbitrators. The matter of contest for the union is who serves on the panel of arbitrators. And the union believed the very language of the CBA itself makes clear that the parties to that agreement should be able to select arbitrators. So the union simply believed that now that there's a new union on board, that this aspect should be redone. We should be able to mutually select the arbitrators that are going to adjust the grievances that the union, for the people that… I understand you had a good faith argument that the MOA didn't require you to use the old arbitrators. You did use an old arbitrator for one matter, right? And the others refused to do so. There was some delay. And that's what the FLRA lights upon, isn't it? That by delaying this process and so on, you were depriving the employees of access to the grievance machinery. Not quite, because the union actually went forward with the one arbitration that was at issue at the time. I've heard about the others. Under protest. The union actually has gone forward. There have been delays in the arbitration process for other reasons, but the union has gone forward. They have continued to utilize this panel to date, including Mr. Fagenbaum and Mr. Foster. The union is moving forward. I think the FLRA focused on the conduct in asking that the arbitrators step down or voluntarily step down. The FLRA saw that as… That's true with regard to the B-1, but not the B-5. The B-5 is confusing to the union and, quite frankly, to myself. B-5 is refusing to negotiate in good faith or refusing to work with the employer. And there's just no evidence in the record whatsoever that the union has failed to do that. In fact, the union's argument is that we do want to negotiate in good faith. We do want to get together with the employer in order to select the panel of arbitrators. I think the B-5… But you do want to, is one thing, but their claim is that you violated B-5 by blocking temporarily, perhaps, or blocking access to the grievance machinery. And I think that's incorrect, because the union has never… Did you go to the employer to bargain about replacements? The union did not have the opportunity to bargain about replacements, because the FLRA had ordered that the union's conduct was a ULP. Before that, when you first came in as becoming the incumbent union, did you ever go to the employer and say, let's talk about some new arbitrators? Yes, sir. The union did that. The employer refused. The employer wanted to use the panel of arbitrators. Did you then go to the FLRA and complain? No, the union did not complain to the FLRA. Instead, you took self-help? I think the union simply let the arbitrators know that they didn't feel that their service was mutual. I think it was an expression of opinion. I think it was an argument that the union had the right to make under the statute itself, under 716E. I need to ask you a question about that, because I find it very confusing, 716E. To show that your statements are protected under that section, do you have to show both that the statements were not personal views and that they were not coercive? Yes. I think personal opinion or expressions or argument for the union and that they were not coercive, yes. I believe that is the case. How can they be personal as opposed to on behalf of the union? Well, if you look at the case law, personal seems to arise in the context of it when it's an individual person expressing their own personal opinions. This, in this case, was the opinion of the union. So I would say that this falls more under the argument or opinion part of the union. The union was simply expressing their opinion that a panel of arbitrators that were not mutually selective— The union as a body and not a personal statement. The president of the union was acting on behalf of the union as a body and expressing this opinion and making this argument and its colloquy back and forth with the arbitrators. And then, yes, I think the union has to show that the speech was not threatening or coercive. And I think that there isn't anything about the colloquy between the arbitrators that even could reasonably be viewed as threatening and coercive. I think when you look at the case laws that the courts have concerning what— The ALJ focused on the implicit threat to and the accusation of unethical view. Well— The threat to complain about that. He did. I think there's case law that even says that an implicit threat to sue or a statement that a suit could go forward is not necessarily— The ALJ said it's—actually, it works for coercive conduct under the circumstances, right? That's right. That's part of this campaign to get rid of the old panel, and I don't know how we can not defer to that. Well, I don't know how telling someone that we don't think that you should be participating because you are not mutually selected and— And you're acting in violation of your code of ethics. And pointing out that the code of ethics requires mutuality. Well, I think the court—the ALJ and the board, both—authority both found that—at least the ALJ did—that this was not a violation of the ethical code after all. Well, I think the authority also made an important point that, I mean, what would have happened? And looking at the entire context of the colloquy, even if they had violated this professional code of ethics as issued by the FMCS, what would have been the result? Simply removal from the list, and that list wasn't even at issue in this case. I mean, it's hard to see pointing out that here is the guidelines by which we must all operate, and here is how you're stepping outside of those guidelines can be considered threatening or coercive behavior. Well, they had—the union had an opportunity to take the complaint to the agency, and it decided not to. It decided to proceed under protest. Well, I think the union went to the agency and was unsuccessful in getting them to renegotiate a new list of arbitrators. And so they didn't feel that there was any reason that would preclude them from letting the arbitrators know. Did that happen after the union went to the employer and tried to get agreement? The employer said no, they wanted to use the existing panel. Yes, yes. Then it went to the agency, and what did it do? The union went to the agency first and said we wanted to use a different panel. The agency said no. Then they went to the arbitrators and notified the arbitrators that they had not been voluntarily selected, that we're the new union on board, that we'd like to have the opportunity to meet with you because we think that we should be a part of the process of the arbitration selection. So having—let me just be clear. The ALJ rejected the notion that you had exhausted all of the remedies you had, and otherwise you were just parroting what the requirement was. I'm sorry, Your Honor. The FLRA didn't really speak to the notion of exhausting remedies. No, I know, but, I mean, that would be the implication of the ALJ's decision, wouldn't it? Well, the ALJ's—the FLRA simply said that the union had committed an unfair labor practice by engaging in this conduct, ostensibly because the conduct was, in fact, coercive and threatening. We can ask counsel what was the alternative facing the union. I mean, yes. I mean, ultimately, the union did not commit an unfair labor practice. That's what your position is. We understand. That's correct. Well, hear from me. Okay. Thank you, Your Honor. Good morning, Your Honors. My name is Rebecca Althorn, and together with Noah Peters, I represent the Federal Labor Relations Authority in this matter. This case is a simple one. We would state that and respectively submit that the union did engage in an unfair labor practice by refusing to give and to abide by mandatory provision of the collective bargaining agreement, and that would include the memorandum of agreement that the predecessor union entered into with the agency that is all part of the mandatory portion of the collective bargaining agreement. So what is a newly elected and certified union? I beg your pardon? What options does it have if it doesn't like the old panel? The option that it has is to wait until the end of the term of the agreement and renegotiate that. How long is that? Three years hence? Four years, Your Honor. Four years hence. Oh, yes. Can't do anything for four years? No, Your Honor. And that is based actually upon an interpretation of the statute that has been held by the FLRA since the early 1980s. And what has the agency said? The agency has said, Your Honor, that part of the purpose of the statute is to ensure that there is stability in labor relations, which means that there have to be periods of repose. When a collective bargaining agreement is entered into by two parties, any successors to that agreement are bound to the agreement to the same extent as the predecessor was. No exceptions? No exceptions. I mean, there are minor caveats, but not applicable in this. So there is no option available to the union? There is no option available to the union. So even though there is a requirement of mutual selection, that mutuality has already been fulfilled? That is correct, Your Honor. All right. So can I? No, go ahead. I didn't mean to interrupt you. No, no. Well, I have a related question. So on this issue, am I right that the union objected to Conway's award, right, in the grievance case? That went to the FLRA, correct? It did, Your Honor. And in that, didn't the FLRA determine that the union is bound by the arbitration procedures? Yes, Your Honor. Well, why don't you argue that that resolves the issue here? Isn't that binding now? That is binding, yes, it is, Your Honor. Well, you didn't argue that in your brief. Am I missing something? I mean, isn't that, like law, the case? Because I know the FLRA finds its decisions, previous decisions binding. Why isn't this just resolve this issue completely? Your Honor, it certainly provides substantial evidence for resolving this matter. Wait, wait, wait. Not substantial evidence. I'm asking why you didn't argue this. That's basically what I'm asking. Your Honor, because the other matter was in arbitration, and it primarily focused on the issue of the arbitration. I understand that the FLRA decided this question, didn't it? I beg your pardon? Didn't the FLRA decide that the union was bound by the arbitration proceedings in the existing collective bargaining agreement? Yes, Your Honor. Okay. My only question is, why isn't that finding binding here? That, in that case, it was review of an arbitration award. What difference does it make whether it's an arbitration award? The FLRA ruled as a matter of law that the union was bound by the existing collective bargaining agreement and the mediation procedures negotiated under it, right? Yes, Your Honor. Therefore, why isn't it explained? The authority came to the same conclusion in this case. Yeah, that's my point. Why? The issue is over. Why is it alive anymore? Isn't it? Do you understand what I'm asking? I do, Your Honor, but I think that part of what this case was also attempting to address is the issue of the unfair labor practices that the union had engaged in, in harassing and coercing the arbitrators to resign. That's a different question. That's a different question. Well, you didn't make the argument. The case is not over, but the legal question has been solved. Right. And you agree with that, don't you? Yes, Your Honor. And so the only question is, is there any further remedy because of the ALJ's findings in terms of the nature of the remarks? That is correct, Your Honor. And the further remedy in this case was appropriate because it was a remedy nontraditional, though it was, just simply asking the union to invite these arbitrators to return to the panel. I don't have any other questions. Anything further? No. No. Excuse me? Anything further? No, thank you, Your Honor. All right. Thank you. All right. Counsel for Petitioner. Your Honor's to answer. Would you just address this one question that I just asked? Why isn't this question of whether the union is bound by the CBA and its grievance procedures kind of law of the case? Why is this even any longer a live issue? Because the FLRA, Your Honor, actually didn't address the issue that's present before the court today. Ah. Tell me why. That's... Yes, the FLRA certainly said... Didn't they say it was bound? I'm sorry, Your Honor. Didn't they say the union was bound by the CBA? Yes, and the union doesn't disagree, nor does the union disagree when they're bound by the grievance procedure. The question is, is the selection of arbitrators. The FLRA can't make an arbitrator serve as an... Wasn't that decided in the grievance case? It was decided that... Because that was Conway, right? Yes. It was the same guy. Yes, but it doesn't answer the question of when an arbitrator resigns or steps down, what happens? And that's the issue. The union simply went to the arbitrators and said, hey, we didn't mutually select you. We don't want to use you. They voluntarily stood down. Then what happens? The parties are supposed to negotiate to replace new arbitrators. So the FLRA case concerning arbitrators, Conway's jurisdiction in that particular grievance resolves an issue that wasn't really in dispute, that they had to follow the grievance process and that they had to work with the arbitrators that had been selected. The question presented here today was, was the union's conduct in asking arbitrators to voluntarily resign because of their opinion, was that a ULP? And the FLRA case does not speak to that particular issue and whether or not this was an unfair labor practice. And I wanted to talk, does that answer your question, Judge Tatel? No. You go ahead. I mean, I could give you a little more. No, it's okay. Why don't you go ahead. I just wanted to just talk quickly about the remedy and the nontraditional aspect. Inviting him back? Yes. Not specifically arbitrator Fagenbaum, because that's just tied to the fact that this is an ULP. Conway is out of the picture, too, because he got his money. He voluntarily resigned and he did it pursuant to a settlement agreement, a contractual agreement. He stepped down because he got paid. Yes, absolutely. All right. So he's out of the picture, too. Well, he's in the picture to the extent that the FLRA has ordered that he be brought back. He be invited back. He be invited back. And all of the conduct that went back and forth with arbitrator Conway happened after the charge period or outside of the charge period. So it was inappropriate of the FLRA to order that conduct that is outside of the charge period be remedied based on this charge, but also because there was this contractual agreement that arbitrator Conway stepped down. And then I also wanted to add the second issue, which was about having the FLRA consider the fact that arbitrator Conway has moved out of the area and is charging both parties, the government. You could have raised that at the time of the fashion, but you didn't. It wasn't known at the time. So it looks like the union raising the issue, finding out the information and raising the issue, crossed in the mail with the FLRA's decision. They don't communicate electronically. They send their decisions by mail. So when the union realized and obtained proof, which was a bill from another case, that arbitrator Conway was actually paying people, I mean charging people for his transportation costs, the union then prepared to go to the FLRA, and I'm And it should be something that is considered by the FLRA because And they just refused to consider it? They didn't want to consider it. That's not the issue. Did they consider it? No, they did not consider it. No, ma'am. So what's the status of that? So under the statute, this court has the authority to send this case back to the FLRA for consideration of that issue. And where will we find that that issue was raised to the agency? Where would you? Well, under the In regard to Conway's moving out of the area, and therefore the parties, if they use him, will have to pay these long-distance travel costs. Where was that raised with the agency? Yes. Oh, it's not in the record in the sense that So it's not before us. Well, under the statute, the court has the authority to hear new evidence that's not in the record, that's not a part of the record, or that wasn't before the agency, didn't you really want them to reopen the record? I think it's an important consideration because Arbitrator Conway has created facts that none of the parties had anticipated. I mean, I think whether the government itself is going to use taxpayers' dollars to pay for an arbitrator to travel You make a nice argument. The only point is, is that what is before us? All right? This is an argument you've raised at all arguments? No, it's in a brief. Oh, yes, ma'am. It's in the brief. I apologize. I know, but where was it before the agency? Well, it wasn't before the agency because the agency made the FLRA. Now, I understand that, and so I don't know what we would be asking the agency to look at. Well, under the statute, the court can send this back. I understand that, counsel, but normally we don't just reach out and say, oh, why don't you consider this someday? Normally we send it back because something has been raised, and the agency hasn't adequately responded. And you cannot point us to anything like that. Is that correct? Well, the issue was raised with the agency. How? The union filed the motion for reconsideration. The agency was aware of the motion for reconsideration. The motion raises Conway's move. Yes. All right, so that's what you should have told me. I apologize, Your Honor. All right, and where will I find that? You won't find it in the record because the FLRA did not. Where will I find it? On the docket of the FLRA? Yes, it is on the docket. Do you have a date? Let me see if I can grab the date for you for the motion. And why don't counsel mutually file a copy of that motion and any response that the agency filed? Okay, yes. Was supplemental filing before the court? Yes, it was filed on March 11th. March 11th, and did the agency respond? The agency did file a response to it, opposing it. All right, and did you file a reply? I don't believe that there was a reply. All right, so let us have the two documents that are before the agency, both the motion and the opposition. I think they're in the record. They are in the record, or the opposition, yes. I'm not sure that the opposition. Why don't counsel get together and make sure that the court has both documents? We will, Your Honor. One thing that I want to point out, Your Honor, is that the record was closed before the authority when the motion was filed. And we are asking that counsel make these documents available to us so we know what we're talking about. Yes, Your Honor. This ought to be very simple, counsel. Yes, ma'am. We'll file it with the court, absolutely. Thank you. Shana, take notes when they're going to file it. Thank you, Your Honor. Thank you very much. We'll take the case under advisement. Thank you.
judges: Rogers, Tatel, Ginsburg